**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

**MICHAEL WOODBERRY**
**8910 Hardesty Drive**
**Clinton, Maryland 20735**

***Plaintiff***

**v.**

**JAMES D. BERRY, JR.**
**DEPUTY DIRECTOR OF COURT SERVICES AND OFFENDER SUPERVISION AGENCY**
**633 Indiana Avenue, NW**
**Washington, DC 20004**

***Defendant***

**Case No.: 1:18-cv-3081**

**JURY TRIAL DEMAND**

**COMPLAINT**

Plaintiff Michael Woodberry, by and through counsel, hereby files this Complaint for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") against Defendant James D. Berry, Jr., Deputy Director of Court Services and Offender Supervision Agency.

**JURISDICTION AND VENUE**

1. This court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e *et seq*.

2. Plaintiff has exhausted all administrative remedies prior to filing suit.

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district, and Defendant may be found in this judicial district.

## PARTIES

4. Plaintiff Michael Woodberry is an African-American male and a resident of the State of Maryland.

5. Defendant James D. Berry, Jr. is the Deputy Director of Court Services and Offender Supervision Agency (hereinafter "Defendant," the "Agency," or "CSOSA"), an administrative agency of the United States government, and an "employer" within the meaning of the statute under which Plaintiff brings his claims. Mr. Berry is being sued in his official capacity.

## FACTUAL ALLEGATIONS

6. CSOSA hired Michael Woodberry, an African-American male, as a treatment specialist in May 2005. He worked at the Agency's Taylor Street location in Washington, DC in and before 2014. Plaintiff Woodberry met the Agency's expectations during his employment and received the highest possible rating of "Exceeds Expectations" for multiple years before 2014. Plaintiff Woodberry's former first-line supervisor, Jennifer Leslie, gave Plaintiff Woodberry outstanding reviews and even recommended him for the Employee of the Year award based on his extraordinary performance. From 2009 to 2013, Plaintiff Woodberry had the highest review ratings among his coworkers.

7. Sheri Lewis, an African American female, became Plaintiff Woodberry's direct supervisor in June 2013. In 2013, the Agency also started a new Young Adult Initiative (YAI) program, which drastically and abruptly increased the workload of treatment specialists by approximately forty-five cases. Due to the increased workload, the treatment specialists had twelve-hour workdays instead of their previous eight hour workdays and had several meetings regarding the adjustment. In April 2013, several coworkers approached Plaintiff Woodberry after

one such meeting because they misinterpreted his silence. To clarify his position Plaintiff Woodberry emailed his colleagues on April 25, 2013 to express his concern regarding the increased workload and apologized for any misunderstanding he might have created through his silence at the meeting. Despite the transition and increased workload, Plaintiff Woodberry received a monetary performance award in November 2014 based on his performance over the previous year and a step increase.

8. Since at least the Fall 2013, there was a treatment specialist vacancy at the South Capitol site. Rufus Felder, Program Manager and Plaintiff Woodberry's second-line supervisor, was responsible for filling the vacancy as the Responsible Management Officer ("RMO"). In the Fall 2013, Mr. Felder spoke with Christofer Barno, one of the only Caucasian treatment specialists, regarding transferring to the South Capitol location. Mr. Barno indicated that he would prefer not to transfer but would do so if required. Based on Mr. Barno's preference, Mr. Felder did not transfer Mr. Barno to the South Capitol site and left the vacancy open for nine months.

9. In 2014, Plaintiff Woodberry had contact with about eighty-five percent of all clients from at the Taylor Street site and entered approximately 4,327 notes in the Agency's client tracking system – the SMART system. In addition, Plaintiff Woodberry helped seventy percent of his clients successfully complete the Challenge to Change Group by making weekly calls to encourage previously reticent clients to report for supervision. John Milam, the Agency's Deputy Associate Director, commended Plaintiff Woodberry's case management work and supported a rating of "exceeds" in the auditing documentation and a rating of "exceeds" in the customer service area. Mr. Milam also recognized that Plaintiff Woodberry's efforts led to multiple YAI graduations, far more than the south campus. In comparison, only three of the

twenty-one clients referred to Mr. Barno's class successfully completed the program. During the same period, many of Mr. Barno's cases were out of compliance. In addition, Plaintiff Woodberry's supervisor, Ms. Lewis stated that he was assigned more cases than the other treatment specialists – eleven more cases than Mr. Barno and thirty-two more cases than Melissa Blackwell.

10. On March 10, 2014, Plaintiff Woodberry was reprimanded by Ms. Lewis for being verbally aggressive during a meeting that day. Two days later on March 12, 2014, Ms. Lewis and Mr. Felder kept Plaintiff Woodberry after the end of his tour of duty to again discuss the March 10, 2014 incident. When Plaintiff Woodberry asked to leave to attend his doctor's appointment, both directed him to sit down and told him he could not leave. Due to the delay, Plaintiff Woodberry missed his doctor's appointment and could not adjust his medication. On March 13, 2014, Ms. Lewis again reprimanded Plaintiff Woodberry due to their interactions on March 10, 2014 and March 12, 2014. After that reprimand, Plaintiff Woodberry was rushed by ambulance from the Agency to Providence Hospital to treat his dangerously high blood sugar and blood pressure. Plaintiff Woodberry missed one week of work due to the severity of his condition.

11. Near the end of June 2014, Mr. Felder told Plaintiff Woodberry that he would be transferred to the South Capitol site. When Plaintiff Woodberry asked Mr. Felder why he was chosen for the transfer, Mr. Felder stated that the South Capitol location needed a "strong African American male presence" On July 3, 2014, Plaintiff Woodberry emailed Mr. Felder stating his belief that there was a "hidden agenda" behind his transfer and asked for the "truth." Plaintiff Woodberry stated his willingness to transfer ***if*** there is an *actual* need. Additionally,

Plaintiff Woodberry objected to the abrupt nature of his forced transfer because he was not informed of the transfer date nor of the staff assuming his caseload.

12. On July 10, 2014, Mr. Felder and Ms. Lewis met with Plaintiff Woodberry alone. During the meeting, Mr. Felder and Ms. Lewis issued Plaintiff Woodberry a Letter of Caution regarding the March 10, 2014 meeting from four months prior. Even after the delay, the Letter of Caution was still not authorized by the human resources ("HR") department. Once the Agency's HR discovered the letter, Amara Thornton-Brown, the Employee & Labor Relations Specialist, wrote:

> *Discipline is to be issued in a timely manner and should be progressive and corrective in nature.*
>
> The incident giving rise to the letter happened March 10, 2014, yet the letter was issued *4 months later, without any indication of an additional infraction or any expectation discussion regarding the conduct.* Additionally, the letter appears to indicate that Mr. Woodberry was *approached on three separate occasions regarding this incident.* On March 10 when he accepted responsibility, two days later it was brought up again and four months later the subject letter was issued. *It gives the appearance that this action is punitive rather than corrective, and not the least evasive course of action to address the misconduct.*

13. The July 2014 letter was also backdated to April 11, 2014. Due to the timing and method in which the Letter of Caution was issued, Plaintiff Woodberry believed that Mr. Felder and Ms. Lewis could add anything to his file at any time. Plaintiff Woodberry feared meeting alone with Mr. Felder and Ms. Lewis because during these meetings he felt as though he was hung like a "dartboard so that [Ms. Lewis and Mr. Felder] can throw darts at [him.]"

14. On the same day of July 10, 2014, Mr. Felder and Ms. Lewis warned Plaintiff Woodberry against speaking with his coworkers regarding his performance evaluation. Plaintiff Woodberry believed that Mr. Felder and Mr. Lewis would give him a negative review regardless of his performance based on this comment; therefore, on or before July 30, 2014 Plaintiff Woodberry requested that Mr. Milam review him instead of Ms. Lewis. Ms. Lewis still

conducted Plaintiff Woodberry's 2014 review and specifically lowered his rating review because Plaintiff Woodberry spoke with coworkers regarding their reviews. Ms. Lewis also cited criticisms as early as April 2013, before she became Plaintiff Woodberry's direct supervisor and before the start of the review period of August 2013. Ms. Lewis' 2014 evaluation dropped Plaintiff Woodberry from having the highest to lowest rating score among his peers; he scored more than one hundred points lower than each of his coworkers.

15. In July 2014, Sabrina Estes, a female treatment specialist, voluntarily transferred *into* the Taylor Street site almost at the same time that Plaintiff Woodberry transferred *out* of the Taylor Street location. When Ms. Estes started at the Taylor Street location, Ms. Blackwell was still working at the same location.

16. Kevin Moore became Plaintiff Woodberry's supervisor at the South Capitol site. Plaintiff Woodberry had an earlier tour of duty at the South Capitol location and incurred additional childcare costs in the morning due to the transfer. Plaintiff Woodberry told Mr. Moore about his EEO activity when he transferred to the South Capitol site. On August 7, 2014, Plaintiff Woodberry and Mr. Moore exchanged emails regarding the use of administrative leave for EEO activities and Plaintiff Woodberry's appeal of his 2014 review and his transfer.

17. In September 2014, while Plaintiff Woodberry was attending a group therapy retreat, Mr. Moore questioned Plaintiff Woodberry's coworker, Sam Castle about his absence and stated Plaintiff Woodberry lied on his leave request. Mr. Moore discussed Plaintiff Woodberry's leave and his questioning of Mr. Castle with Mr. Felder and a third-party, whom he refused to disclose. Mr. Moore continued to question Plaintiff Woodberry's coworkers about his whereabouts and his work performance instead of speaking directly to him. He continued to discuss Plaintiff Woodberry's coworkers about Plaintiff Woodberry's private leave time and

work performance until Plaintiff Woodberry was detailed to another department in October 2017.

## COUNT I

**Violation of Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. § 2000e *et seq*.**
**(Discriminatory Disparate Treatment based on Race, Color, and Gender)**

18. Plaintiff incorporates by reference paragraphs 1 through 17 as if fully stated herein.

19. Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

20. At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

21. At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

22. In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq.*, Defendant knowingly and intentionally subjected Plaintiff to discrimination based on his race, color, and gender. Specifically, Defendant forced Plaintiff Woodberry to transfer from the Taylor Street location to the South Capitol location because he was a strong black man and replaced him with Ms. Estes. His Caucasian counterpart was not forced to transfer once he expressed his preference not to and left the South Capitol vacancy open for nine months. In addition, Defendant lowered Plaintiff Woodberry's review to a point that he went from receiving the

highest rating for a treatment specialist from 2009 to 2013 to the lowest in 2014 – more than one hundred points lower than his Caucasian and/or female coworkers. He received this rating even though his supervisor recognized that more clients than his Caucasian and/or female coworkers and recognized that he had a drastically higher success rate in helping his clients complete the Challenge to Change Group.

23. As a result of such acts, Plaintiff has suffered damages.

**COUNT II**

**Violation of Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. § 2000e *et seq*.**
**(Hostile Work Environment)**

24. Plaintiff incorporates by reference paragraphs 1 through 23 as if fully stated herein.

25. Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

26. A hostile work environment is a form of prohibited employment discrimination where the employee is subjected to a work environment permeated with ridicule and humiliation and/or subjected to adverse action that substantially alters the work environment because of that employee's race, color, religion, sex, or national origin.

27. At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

28. At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

29. In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq.*, Defendant knowingly and intentionally subjected Plaintiff to a discriminatory and retaliatory hostile work environment in 2014 that was sufficiently harassing to send him to the hospital, which impeded his ability to work. Some of the harassing actions included, but are not limited to, Defendants preventing Plaintiff Woodberry from leaving work after his tour of duty to attend his doctor's visit in March 2014, which caused his later emergency hospital visit and forcing him to transfer to the South Capitol location after a Caucasian coworker was not required to transfer and the position had remained vacant for nine months. When Plaintiff Woodberry told Mr. Felder that his transfer was not based on his being a strong black man and had a "hidden agenda" and asked for the true reason, Mr. Felder's harassment of Plaintiff Woodberry intensified. Plaintiff Woodberry's supervisors ignored his questions regarding why he was targeted for transfer, prohibited him from speaking with his coworkers about the rating, and then issued him the lowest rating out of all specialists. They issued him a Letter of Caution, without consulting HR, that the Agency's own HR found to appear punitive instead of corrective. Their actions made Plaintiff Woodberry feel hopeless as his supervisors treated him differently than his coworkers and fearful as he believed that anytime he was left alone with his supervisors they would charge him with additional misconduct without justification. When Plaintiff Woodberry transferred, his new supervisor, Mr. Moore, spoke with his coworkers about his leave and performance instead of directly to Plaintiff Woodberry and accused him of lying about his leave. Mr. Moore isolated Plaintiff Woodberry during the entire period he supervised Plaintiff Woodberry.

**COUNT III**

**Violation of Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. § 2000e *et seq.***
**(Retaliation )**

30. Plaintiff incorporates by reference paragraphs 1 through 29 as if fully stated herein.

31. Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to retaliate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual protected activity.

32. Plaintiff Woodberry engaged in a protected activity when he objected to a transfer because he is an African American male after a Caucasian male expressed a preference not to accept the transfer and Plaintiff Woodberry told Mr. Felder that there was a "hidden agenda" for his forced transfer in response to Mr. Felder's reason that a strong black man was needed for the location even though Mr. Felder did not force Plaintiff Woodberry's Caucasian counterpart to transfer. Further, Plaintiff Woodberry engaged in a protected activity when he informed his new supervisor Mr. Moore of his discriminatory transfer.

33. At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

34. At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

35. In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq.*, Defendant knowingly and intentionally subjected Plaintiff to retaliation based on his protected activities. Specifically, Defendant lowered Plaintiff Woodberry's review to a point that he went

from receiving the highest rating for a treatment specialist from 2009 to 2013 to the lowest in 2014 – more than one hundred points lower than his Caucasian and/or female coworkers. He received this rating even though his supervisor recognized that he had more clients than his Caucasian and/or female coworkers and recognized that he had a drastically higher success rate in helping his clients complete the Challenge to Change Group. In addition, Defendant accused Plaintiff Woodberry of lying about his use of leave.

36. As a result of such acts, Plaintiff has suffered damages.

**PRAYER FOR RELIEF**

WHEREFORE and for the foregoing reasons, Plaintiff respectfully prays as follows:

a. Issue a declaratory judgment that Defendant's practices toward Plaintiff were violative of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

b. Enjoin Defendant from discriminating against employees based on their race, color, and gender;

c. Award Plaintiff all entitled compensatory damages;

d. Award payment of all fees, costs, expenses, including attorneys' fees and expert fees; and

e. Award Plaintiff such other relief as to which he may be deemed entitled.

Respectfully submitted,

/s/

David A. Branch #438764
Law Office of David A. Branch & Associates, PLLC
1828 L Street NW, Suite 820
Washington, DC 20036
(202) 785-2805 phone
(202) 785-0289 fax
davidbranch@dbranchlaw.com

## **JURY TRIAL**

Plaintiff requests a trial by jury on all issues.