UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL WOODBERRY,

*Plaintiff*,

v.

RICHARD S. TISCHNER, Director, Court Services and Offender Supervision Agency,

*Defendant*.[1]

No. 18-cv-3081 (DLF)

**MEMORANDUM OPINION**

Michael Woodberry brings this Title VII action against Richard Tischner, the Director of the Court Services and Offender Supervision Agency. Before the Court is the Director's Motion for Summary Judgment, Dkt. 38, as to the sole remaining claim in this case—Woodberry's allegation that his supervisors at the agency discriminated against him by transferring him to a different job site within the agency. For the following reasons, the Court will deny the Director's motion.

**I.    BACKGROUND**

    **A.    Factual Background**

Around 2005, Woodberry, an African American male, began working as a treatment specialist at the agency's Taylor Street office in Washington, D.C. Def.'s Statement of Undisputed

---

[1] Pursuant to Rule 25(d), of the Federal Rules of Civil Procedure, Richard S. Tischner, the Director of the Court Services and Offender Supervision Agency, has been substituted for James D. Berry, Jr. as the defendant.

Material Facts (Def.'s First Statement of Facts) ¶¶ 1–2, Dkt. 22-4.[2]  In 2013, Woodberry joined a team of employees in the Young Adult Initiative, a specialized unit addressing offenders between the ages of 18 and 25.  Def.'s Statement of Undisputed Material Facts Relating to Pl.'s Claim (Def.'s Second Statement of Facts) ¶¶ 11–12, Dkt. 38-2.  That year, Sheri Lewis, an African American female, began serving as Woodberry's direct supervisor.  Def.'s First Statement of Facts ¶ 3.  During his time at Taylor Street, Woodberry came into conflict with Lewis.  According to Lewis, Woodberry "attempted on more than one occasion to intimidate" her and "was often combative in his interactions" with her.  Pl.'s Ex. D at ¶ 5, Dkt. 41-2.

After a treatment specialist left the agency's South Capitol Street office, Rufus Felder, Lewis's supervisor, decided to transfer Woodberry from Taylor Street to South Capitol Street.  Def.'s Second Statement of Facts ¶¶ 3–4.  On June 26, 2014, Felder spoke to Woodberry about the transfer.  *Id.* ¶ 19.  Both parties agree that, during this conversation, Woodberry questioned the transfer, and "Felder explained that the South Capitol Street location needed 'a strong African American male presence.'"  Def.'s Mem. in Supp. of Mot. for Summ. J. at 2, Dkt. 38-1 (quoting Def.'s First Statement of Facts ¶ 19); *see* Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. Judg. at 4, Dkt. 41.  Woodberry then told Felder that race and gender had nothing to do with the job and that anyone assigned as a treatment specialist could do the work.  Denisha Minor-Armstead Decl. (Report of Investigation) at 124–25, Dkt. 22-2.  A few days later, in a July 3, 2014 email, Woodberry confirmed his impression of this interaction in an email to Felder: "If there is a need for a strong black male at South Capital [sic] for the YA I am more than willing to fulfill that

---

[2] The Court cites the Director's Statement of Facts if a fact is undisputed.  If a fact is disputed, it will indicate as such.

need." *Id.* at 22. In the same email, he also stated that he believed "there [was a] hidden agenda" for the move. *Id.*

When asked later by an Equal Employment Opportunity (EEO) investigator to explain why he chose Woodberry for the transfer, Felder stated that he transferred Woodberry due to the "[n]eeds of the program, concerns regarding the population at South Capitol Street[,] and to support the Young Adult Initiative." *Id.* at 140; *see also* Pl.'s Ex. B at 16, Dkt. 41-2 (Felder deposition statement that Woodberry was transferred due to "agency mission"). For her part, Lewis stated that Woodberry was transferred because of "his failure to respond to redirection and creating a hostile environment for his supervisor." Report of Investigation at 146. Lewis stated that Felder had asked her whether she would "like to have Mr. Woodberry transferred," and she responded that "it would be the best solution." *Id.* The deciding official for the transfer was, however, Felder, not Lewis. *See id.* at 140–01.

### B. Procedural History

On November 3, 2014, Woodberry filed a formal complaint with the EEO Office. Report of Investigation at 83. His original complaint alleged, among other things, that he had been "forced to transfer to the 4415 South Capital [sic] Street facility because the Agency allegedly needed a 'strong black male' presence there." *Id.* at 83–84. After Woodberry amended his complaint, the EEO Office investigated allegations related to the transfer, an "inaccurate and lowered" performance review, and retaliation. *Id.* at 90–91. The Office accepted for processing some of Woodberry's allegations, including that the agency discriminatorily transferred him. *Id.* On May 23, 2018, the EEO Office granted summary judgment in favor of the Director on all allegations. *See* Def.'s Ex. C, Dkt. 22-3.

Woodberry filed a complaint before the Court on December 26, 2018, Dkt. 1, and filed an amended version on August 8, 2019, Dkt. 9. The amended complaint alleges that the Director discriminated against Woodberry based on his race, color, and gender when Woodberry was transferred and received a negative 2014 performance review. Am. Compl. ¶¶ 26–31. Woodberry also raises hostile-work-environment and retaliation claims based on other Agency actions during his employment. *Id.* ¶¶ 32–44.

The Director moved to dismiss the amended complaint on September 24, 2019. Dkt. 10. The Court granted that motion in part and denied it in part. Mem. Op. of June 5, 2020, Dkt. 15. It granted the motion as to Woodberry's discrimination claim. Applying the D.C. Circuit's caselaw at the time, it found that his transfer to South Capitol did not constitute an adverse employment action sufficient to support a discrimination claim because it was a lateral transfer. *Id.* at 8 (citing *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)). The Court denied the Director's motion to dismiss as to Woodberry's hostile-work-environment and one retaliation claims. *Id.* at 10–17.

After discovery, the Director moved for summary judgment on the remaining claims. Dkt. 22. The Court granted summary judgment against Woodberry on all claims. Mem. Op. of Jan. 28, 2022, Dkt. 28. Woodberry appealed on March 25, 2022. Dkt. 30. Three months later, the Circuit overruled *Brown* in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022), and held that an employer who "transfers an employee . . . because of the employee's race, color, religion, sex, or national origin violates Title VII." *Id.* at 872. The Circuit remanded Woodberry's case for reconsideration in light of *Chambers*. Dkt. 33-1.

The Court vacated in part its previous opinions as to Woodberry's discriminatory-job-transfer claim. Min. Order of Oct. 31, 2022. The Director moved for summary judgment on this claim. Dkt. 38.

4

## II.   LEGAL STANDARDS

Under Rule 56, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48, (1986). A "material" fact is one that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248; *see Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, (2000).

A party "opposing summary judgment" must "substantiate [its allegations] with evidence" that "a reasonable jury could credit in support of each essential element of [its] claims." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015). The moving party is entitled to summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   ANALYSIS

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To state an unlawful-discrimination claim under Title VII, a plaintiff must plausibly allege that "(i) [he]

5

suffered an adverse employment action (ii) because of [his] race, color, religion, sex, or national origin." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008).

As to the first element, the D.C. Circuit previously held that only actions that caused "some . . . materially adverse consequences," such that the plaintiff "suffered objectively tangible harm," were sufficient to support a Title VII discrimination claim. *Brown*, 199 F.3d at 457. Lateral transfers with no additional consequences were thus not sufficient. *See id.* Recently, however, in *Chambers*, the D.C. Circuit clarified that to constitute an adverse action sufficient to support a discrimination claim, an employer's action must "affect[ ] an employee's 'terms, conditions, or privileges of employment.'" *Chambers*, 35 F.4th at 874 (quoting 42 U.S.C. § 2000e-2(a)(1)). The Director concedes that under *Chambers* Woodberry's transfer to South Capitol Street is "arguably . . . actionable." Def.'s Mem. at 9.

As to the second element, a plaintiff must present evidence, either direct or indirect, that "gives rise to an inference of discrimination." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007); *see also Oviedo v. Wash. Metro. Area Transit Auth.*, 948 F.3d 386, 394 (D.C. Cir. 2020). The Director argues that summary judgment is warranted because Woodberry has not presented enough evidence to establish such an inference of discrimination. The Court disagrees.

### A.     Direct Evidence of Discrimination

"A plaintiff may prove [his] Title VII discrimination or retaliation claim with direct evidence," which can include "a statement that itself shows racial bias in the employment decision." *Nurriddin v. Bolden*, 818 F.3d 751, 758 (D.C. Cir. 2016); *see Coats v. DeVos*, 232 F. Supp. 3d 81, 87–88 (D.D.C. 2017). "[W]hen the plaintiff offers direct evidence of discriminatory intent, that evidence will generally entitle a plaintiff to a jury trial." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (cleaned up).

It is undisputed that, in a meeting before Woodberry was transferred, Felder, the supervisor who made the transfer decision, told Woodberry that "the South Capitol Street location needed 'a strong African American male presence.'" Def.'s Mem. at 2 (citation omitted). This statement is direct evidence that supports Woodberry's discrimination claim. It explicitly referred to Woodberry's race and sex and tied those characteristics to the relevant employment decision—*i.e.*, his transfer. No ambiguity clouds the statement. *Cf. Hajjar-Nejad v. George Washington Univ.*, 37 F. Supp. 3d 90, 124–25 (D.D.C. 2014) (finding that an individual's remark that he would not "dine with [Plaintiff's] kind" was ambiguous). The statement also was not a "stray remark[] in the workplace . . . made by nondecision-makers or . . . by decisionmakers unrelated to the decisional process itself." *Brady v. Livingood*, 456 F. Supp. 2d 1, 6 (D.D.C. 2006), *aff'd sub nom. Brady v. Off. Of Sergeant at Arms*, 520 F.3d 490. Felder was the decisionmaker responsible for transferring Woodberry. Pl.'s Ex. B at 14–15. And Felder admitted that his statement referred to "the makeup of the young (mostly African American) population (specific to the South Capitol Street site) who typically do not have positive male role models in their lives." Pl.'s Ex. A ¶ 12. A reasonable juror could thus conclude that Felder's statement directly proves that Woodberry's transfer was discriminatory "without any need for inference." *Hajjar-Nejad*, 37 F. Supp. 3d at 125 (emphasis omitted).

The Director's arguments otherwise are unpersuasive. First, even if Felder's statement was the only evidence Woodberry presented, *see* Def.'s Mem. at 12–14, it alone would be sufficient to preclude summary judgment, *see Ayissi-Etoh*, 712 F.3d at 576–77 (denying summary judgment on a pay-discrimination claim based on a single supervisor's statement that "[f]or a young black man smart like you, we are happy to have your expertise; I think I'm already paying you a lot of money"). Second, even if "the decision to transfer [Woodberry] had already been made" when

7

Felder made the remark, Def.'s Mem. at 12, a decisionmaker's post-decision statements can still be direct evidence of the decisionmaker's reasons for making that decision, *see Ayissi-Etoh,* 712 F.3d at 574–76 (denying summary judgment even though the supervisor's statement was made *after* the plaintiff did not receive a raise).  It is true that intervening events can weaken any causal link between a statement and an employer's decision, *Wicks v. Am. Transmission Co. LLC*, 701 F. Supp. 2d 38, 44–45 (D.D.C. 2010), as can the passage of time, *see id.* ("In sum, [the] comments were isolated, remote in time, and have not been shown to have had anything to do with [the plaintiff's] termination.").  Even so, viewing the evidence in the light most favorable to Woodberry, a reasonable juror could find that that Felder's statement and decision to transfer Woodberry were sufficiently related and close in time to serve as direct evidence of discrimination.  Whether Felder made the statement for discriminatory reasons or to motivate and encourage Woodberry after the transfer decision had already been made, *see* Def.'s Mem. at 3, is a classic dispute of material fact that remains the "province of the jury," *Coats*, 232 F. Supp. 3d at 88. Similarly, that Woodberry stated to Felder that he believed there was an additional "hidden agenda" for the transfer, Report of Investigation at 22; *see* Def.'s Reply at 4, Dkt. 44, is at best countervailing evidence that a jury must weigh at trial.

      **B.**    **Indirect Evidence of Discrimination**

Further, even if Felder's statement is not "[d]irect evidence . . . sufficient alone to defeat a defendant's motion for summary judgment," *Hajjar-Nejad*, 37 F. Supp. 3d at 124, the Court would still deny the Director's motion because indirect evidence supports the same conclusion.

In cases involving indirect evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies.  *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  Under that framework, the employee "must first make out a prima facie case" of discrimination.  *Iyoha*

8

*v. Architect of the Capitol*, 927 F.3d 561, 566 (D.C. Cir. 2019).  The burden then shifts to the employer to "come forward with a legitimate reason for the challenged action." *Id.*  If the employer does, the district court "need not—*and should not*—decide whether the plaintiff actually made out a prima facie case." *Brady*, 520 F.3d at 494.

Here, the Court need not consider whether Woodberry has established a prima facie case of discrimination because the Director has asserted a non-discriminatory reason for the transfer decision.[3]  When a defendant has provided a legitimate reason for terminating an employee, the burden shifts to the employee to show that the reason was pretextual.  *See Iyoha*, 927 F.3d at 566.  So the Court will instead evaluate whether Woodberry "has produced sufficient evidence for a reasonable jury to find that the [agency's] asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race . . . [or] sex." *Brady*, 520 F.3d at 494.

Woodberry has.  Pretext can be shown through "changes and inconsistencies in the stated reasons for the adverse action; the employer's failure to follow established procedures or criteria; the employer's general treatment of minority employees; or discriminatory statements by the

---

[3] The Director argues that Felder transferred Woodberry "because of the Agency's needs and [Woodberry's] fit for those needs." Def.'s Mem. at 10.  Namely, Woodberry had experience in the Young Adult Initiative, which would assist him in serving the young population at the South Capitol Street location.  *See id.*

In this litigation, the Director has also asserted an additional reason for the transfer: "Mr. Felder was aware, at the time of [Woodberry's] transfer, of the personal[] clashes between [Woodberry] and his immediate supervisor, Ms. Lewis." *Id.*  But the Director has presented scant evidence that any clashes were the actual reason for Woodberry's transfer.  *See* Report of Investigation at 140–41 (Felder's statements justifying transfer without reference to any disputes with Lewis).  An agency is not entitled to rely on "*possible* legitimate reasons for employment decisions," only "the *actual* motivation behind the disputed decisions." *Cuddy v. Carmen*, 762 F.2d 119, 127 n.12 (D.C. Cir. 1985) (emphases added).

9

decisionmaker." *Brady*, 520 F.3d at 495 n.3.  First, the Director now asserts reasons for the transfer, *see* Def.'s Mem. at 10 (citing Woodberry's experience in the Young Adult Initiative), that are different from the reasons Felder first provided to the EEO investigator, which are also inconsistent with those provided by Woodberry's other supervisors.  At the June 26, 2014 meeting, Felder told the EEO investigator, he "felt [Woodberry] would be an asset considering the demographic of the particular site," which "is African-American male youth."  Report of Investigation at 173.  Felder explained that he used the phrase "strong 'African American male'" because it "had more to do with the makeup of the young (mostly African American) population (specific to the South Capitol Street site) who typically do not have positive male role models in their lives."  *Id.* at 141.  But Kevin Moore, Woodberry's current supervisor, *id.* at 173, said Woodberry's transfer "was based on amassing the male presence at South Capitol Street," *id.* at 174, *see id.* at 131, whereas Lewis, Woodberry's supervisor at the time of the transfer, stated that Woodberry was transferred "to prevent a backlog" and because he "fail[ed] to respond to redirection and create[d] a hostile environment for supervisor," *id.* at 146; she also stated "there were several complaints made by clients of the Young Adult Initiative to [her] and a Community Supervision Officer," *id.*  The agency's "shifting and inconsistent justifications are probative of pretext."  *Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011) (internal quotation marks omitted).

In addition, Woodberry sets forth "evidence suggesting that [his] employer treated other employees of a different race [or sex] . . . more favorably in the same factual circumstances." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (internal quotation marks omitted).  Melissa Blackwell, an African American female,[4] was similarly situated to Woodberry

---

[4] Woodberry also points to Sabrina Estes, an African American female, and Christofer Barno, a white male, as similarly situated comparators, *see* Pl.'s Opp. at 14–15.  But neither are.  Estes "was primarily involved in monitoring vendors," Def.'s Second Statement of Facts ¶ 16, and had never

10

but was not transferred to South Capitol Street. *See* Def.'s Second Statement of Facts ¶ 15. Like Woodberry, Blackwell had taken on many cases in the Young Adult Initiative, the very program the Director now cites as a non-discriminatory justification for transferring Woodberry. *See* Report of Investigation at 101. Indeed, to the extent there are any material differences between Blackwell and Woodberry, Felder did not provide a clear and specific reason for not choosing Blackwell for the transfer besides referring to "some of the other duties she may have been assigned" and feeling "she needed to stay at Taylor Street." Felder Dep., Pl.'s Ex. C at 23, Dkt. 23-2.

It is of no matter that Lewis later claimed that Woodberry was transferred to South Capitol because of her conflicts with Woodberry as his supervisor, *see* Report of Investigation at 146, because Felder, not Lewis, made the decision to transfer Woodberry, *see* Felder Dep. at 15. And Felder did not provide a reason other than the "[a]gency mission" as to why Woodberry was transferred. *See id.* at 16. Indeed, Felder explicitly answered "[n]o" when asked whether "Ms. Lewis [was] a deciding official in [Woodberry's] transfer," Report of Investigation at 141, and did not cite conflicts with a supervisor as a criterion "use[d] in deciding who should be transferred from Taylor Street to South Capitol Street," *id.* at 140. Because no "declaration, deposition, or other testimony from the employer's *decisionmaker*," *Brady*, 520 F.3d at 493 (emphasis added), indicates that Woodberry's conflicts with Lewis were the non-discriminatory reason for his transfer, and Blackwell is similarly situated in the "relevant aspects of her employment situation," *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995), she is an

---

worked with the Young Adult Initiative, *id.* ¶ 11. And unlike Woodberry, Barno had recently worked in a "hardship duty" assignment at a jail facility, Felder Dep. at 18–22, so the agency honored Barno's preference for not transferring to the South Capitol Street location. *See* Report of Investigation at 101.

appropriate comparator. That Woodberry was treated differently than Blackwell thus provides further evidence that he was transferred for a discriminatory reason.

Viewing the evidence in the light most favorable to Woodberry, a reasonable juror could conclude—based on the Director's explicit remark tying Woodberry's transfer to race and sex, the inconsistencies in the Director's justifications for Woodberry's transfer, and the favorable treatment of a comparator of a different gender—that the Director's reason for transferring Woodberry was pretextual and thus the agency unlawfully discriminated against Woodberry.

## CONCLUSION

For the foregoing reasons, the Director's motion for summary judgment is denied. A separate order consistent with this decision will accompany this memorandum opinion.

———————————————
DABNEY L. FRIEDRICH
United States District Judge

September 1, 2023